**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE,　　　　） | |
| ） | |
| Plaintiff,　　　） | |
| ） | |
| v.　　　　　） | Civil Action No. 18-1508 (RBW) |
| ） | |
| WHITE HOUSE OFFICE OF　　） | |
| MANAGEMENT & BUDGET, <u>et al.</u>,　） | |
| ） | |
| Defendants.　　） | |
| ） | |

<u>**MEMORANDUM OPINION**</u>

　　　　The plaintiff, Cause of Action Institute, brings this civil action against the defendants, the

White House Office of Management and Budget ("OMB") and the United States Department of

Agriculture ("USDA") (collectively, the "defendants"), alleging violations of the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 (2018). <u>See</u> Complaint ("Compl.") ¶ 1. Currently

pending before the Court are the (1) Defendants' Motion to Dismiss ("Defs.' Mot. to Dismiss"),

which seeks dismissal of the plaintiff's claims pursuant to Federal Rule of Civil Procedure

12(b)(1) and (6) or, in the alternative, summary judgment pursuant to Federal Rule of Civil

Procedure 56; and (2) Plaintiff Cause of Action Institute's Motion, in the Alternative, for Rule

56(d) Discovery ("Pl.'s Discovery Mot." or the "motion for discovery"), which seeks limited

discovery pursuant to Federal Rule of Civil Procedure 56(d) in order to acquire facts to oppose

the defendants' request for summary judgment. Upon careful consideration of the parties'

submissions,[1] the Court concludes for the following reasons that it must deny the defendants'

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Statement of Points and Authorities in Support of Their Motion to Dismiss ("Defs.' Mot. to Dismiss Mem."); (2) the Declaration of Alexis Graves in Support of Defendants' Motion to Dismiss

(continued . . . )

motion to dismiss pursuant to Rule 12(b)(1) and the plaintiff's motion for discovery pursuant to Rule 56(d) and grant the defendants' alternative request for summary judgment pursuant to Rule 56 raised in the defendants' motion to dismiss pursuant to Rule 12(b)(6).

## I.     BACKGROUND

According to the plaintiff, on July 7, 2017, the plaintiff submitted a FOIA request to the OMB, "seeking access to the Internet browsing[2] histories of (1) the [OMB] Director John Michael Mulvaney and (2) the OMB Associate Director of Strategic Communications[,]" Compl. ¶ 24 (second alteration in original) (internal quotation marks omitted), as well as a FOIA request to the USDA, "seeking access to copies of Internet browsing histories of (1) the [USDA] Secretary Sonny Perdue and (2) the USDA Director of Communications[,]" id. ¶ 30 (first alteration in original) (internal quotation marks omitted).

As to the plaintiff's FOIA request to the OMB, on July 13, 2017, the "OMB acknowledged that it had received [the plaintiff's] [FOIA] request . . . and assigned it [a] tracking

---

(. . . continued)

("Graves Decl."); (3) the Declaration of Jeng Mao in Support of Defendants' Motion to Dismiss ("Mao Decl."); (4) the Declaration of Heather V. Walsh in Support of Defendants' Motion to Dismiss ("Walsh Decl."); (5) the Declaration of Anthony W. McDonald in Support of Defendants' Motion to Dismiss ("McDonald Decl."); (6) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, and, in the Alternative, in Support of Plaintiff's Motion for Rule 56(d) Discovery ("Pl.'s Discovery Mot. Mem."); (7) the Declaration of Ryan Mulvey ("1st Mulvey Decl."); (8) the Declaration of Ryan P. Mulvey in Support of Plaintiff's Motion, in the Alternative, for Rule 56(d) Discovery ("2d Mulvey Decl."); (9) the Defendants' Reply in Support of Their Motion to Dismiss ("Defs.' Mot. to Dismiss Reply"); (10) the Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Discovery ("Defs.' Discovery Opp'n"); (11) the Reply in Support of Plaintiff Cause of Action Institute's Motion, in the Alternative, for Rule 56(d) Discovery ("Pl.'s Discovery Reply"); (12) the Notice of Supplemental Declaration ("Defs.' Not."); (13) the Supplemental Declaration of Anthony W. McDonald in Support of Defendants' Motion to Dismiss ("2d McDonald Decl."); and (14) the Notice of Supplemental Authority ("Pl.'s Not.").

[2] "The use of an Internet browser to visit a website entails the automatic creation and collection of numerous pieces of information known collectively as a 'session history entry.'  Such information may include details about the user, his or her individual device and wider network (e.g., Internet protocol address), and a minimum, the location or [Uniform Resource Locator ('URL')] that has been visited.  By navigating between webpages, a browser user adds or modifies entries to his or her session history, which is then maintained on and accessible through the native structure of the browser itself.  [ ] The information is typically viewed through the 'History' function of the browser."  Compl. ¶¶ 11–12.

number," id. ¶ 27, but "[d]espite repeated attempts by [the plaintiff] to inquire as to the processing status of the . . . FOIA request, [ ] [the] OMB has failed to provide any additional updates," id. ¶ 28, and "[t]o date, . . . has neither invoked the automatic statutory extension of its response deadline, nor . . . provided an estimated date of completion for its determination," id. ¶ 29 (citation omitted).

As to the plaintiff's FOIA request to the USDA, on July 17, 2017, the "USDA acknowledged that it had received the [plaintiff's] [FOIA] request . . . and assigned it [a] tracking number[.]" Id. ¶ 33.  On August 30, 2017, the USDA "issued its final determination, . . . decid[ing] that, because browsing histories are not integrated into the agency's record system or files, [they] do[] not meet the requirements of being under agency control[,] . . . [and] determin[ing] that [t]he FOIA . . . does not require agencies to create records for the purposes of satisfying records requests."  Id. ¶ 34 (third, fourth, and tenth alterations in original) (citations and internal quotation marks omitted).  On September 7, 2017, the plaintiff "timely appealed [ ] [the] USDA's adverse determination," id. ¶ 35, and on May 18, 2018, the "USDA denied [the plaintiff's] administrative appeal and summarily upheld the [Departmental FOIA Office's] initial determination[,]" id. ¶ 36 (second alteration in original) (internal quotation marks omitted).

On June 26, 2018, the plaintiff filed its Complaint in this Court, see id. at 1, alleging violations of the FOIA by both defendants, see id. ¶¶ 37–55.  The defendants thereafter filed their motion to dismiss pursuant to Rule 12(b)(1) and (6), or alternatively, for summary judgment pursuant to Rule 56, see Defs.' Mot. to Dismiss at 1, and the plaintiff filed its motion for discovery pursuant to Rule 56(d), see Pl.'s Discovery Mot. at 1, which are the subjects of this Memorandum Opinion.

## II.      STANDARDS OF REVIEW

### A.      Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction," <u>Kokkonen v. Guardian Life</u>

<u>Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction,'" <u>Morrow</u>

<u>v. United States</u>, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting <u>Haase v. Sessions</u>,

835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s]

. . . subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be presumed that a

cause lies outside [the Court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377, the plaintiff

bears the burden of establishing by a preponderance of the evidence that the Court has subject-

matter jurisdiction, <u>see</u> <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court "need

not limit itself to the allegations of the complaint."  <u>Grand Lodge of the Fraternal Order of Police</u>

<u>v. Ashcroft</u>, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such

materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has

jurisdiction [over] the case."  <u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22

(D.D.C. 2000); <u>see</u> <u>Jerome Stevens Pharms., Inc. v. Food & Drug Admin.</u>, 402 F.3d 1249, 1253

(D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual

allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the

benefit of all inferences that can be derived from the facts alleged.'"  <u>Am. Nat'l Ins. Co. v. Fed.</u>

<u>Deposit Ins. Corp.</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d

970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . .

will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for

failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

**B.      Rule 12(b)(6) Motion to Dismiss**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556); see Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged").  Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this presumption.  See, e.g., Kowal, 16 F.3d at 1276.  Along with the allegations made within the four corners of the complaint, the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Rule 56 Motion for Summary Judgment**

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When ruling on a Rule 56 motion for summary judgment, the Court must view

the evidence in the light most favorable to the non-moving party.  See Holcomb v. Powell, 433

F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,

150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving

party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere

allegations or denials."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson,

477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a

triable issue of fact."  Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898,

908 (D.C Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v.

Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980)).  If the Court concludes that "the

non[-]moving party has failed to make a sufficient showing on an essential element of [its] case

with respect to which [it] has the burden of proof," then the moving party is entitled to summary

judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S.

Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S.

Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "[The] FOIA requires federal agencies to

disclose, upon request, broad classes of agency records unless the records are covered by the

statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833

(D.C. Cir. 2001).  In a FOIA action, the defendant agency has "[the] burden of demonstrating

that the withheld documents are exempt from disclosure."  Boyd v. Crim. Div. of U.S. Dep't of

Justice, 475 F.3d 381, 385 (D.C. Cir. 2007).  Therefore, the Court will grant summary judgment

to the government in a FOIA case only if the agency can prove "that it has fully discharged its

obligations under the FOIA, after the underlying facts and the inferences to be drawn from them

are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt from [disclosure].'" Students Against Genocide, 257 F.3d at 833 (first alteration in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).

**D.      Motion for Discovery**

In FOIA cases, "[d]iscovery is only appropriate when an agency has not taken adequate steps to uncover responsive documents." Schrecker v. U.S. Dep't of Justice, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) (citing SafeCard Servs., Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1202 (D.C. Cir. 1992)). "Discovery in FOIA [cases] is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith[,] and the [C]ourt is satisfied that no factual dispute remains." Id. "When allowed, the scope of discovery is usually limited to the adequacy of the agency's search and similar matters." Voinche v. Fed. Bureau of Investigation, 412 F. Supp. 2d 60, 71 (D.D.C. 2006). "An exception to limiting the scope of discovery is made if the plaintiff has made a sufficient showing that the agency acted in bad faith." Id. at 72.

### III.      ANALYSIS

The defendants move to dismiss the plaintiff's Complaint pursuant to Rule 12(b)(1), see Defs.' Mot. to Dismiss Mem. at 11, arguing that "[t]his Court lacks jurisdiction to order production of the requested browsing histories because they are not agency records," id. at 12.

The defendants also move to dismiss the plaintiff's Complaint pursuant to Rule 12(b)(6), challenging the sufficiency of the plaintiff's Complaint, and further argue that "[i]n the event the Court relies on the agency declarations in assessing [the] [d]efendants' [Rule] 12(b)(6) motion, Rule 12(d) requires that the motion be treated as one for summary judgment under Rule 56." Id. at 11.  The plaintiff responds that "[t]he Court possesses the requisite subject-matter jurisdiction to hear this case" under Rule 12(b)(1), Pl.'s Discovery Mem. at 1, and moves to compel discovery pursuant to Rule 56(d), arguing that it "is entitled to limited discovery to acquire facts necessary to oppose [the] [d]efendants' alternative motion for summary judgment," id. at 34. The Court will first address the defendants' motion to dismiss and then address the defendants' alternative motion for summary judgment and whether the plaintiff is entitled to discovery.

## A.       The Defendants' Rule 12(b)(1) Motion to Dismiss

The defendants argue that "[t]his Court lacks [subject-matter] jurisdiction to order production of the requested browsing history records" because they are not agency records. Defs.' Mot. to Dismiss Mem. at 12.  The plaintiff responds that "[t]he Court possesses the requisite subject-matter jurisdiction to hear this case," because "applicable precedents and persuasive authorities teach that the FOIA's 'jurisdictional' language does not implicate [ ] [the] [C]ourt's subject-matter jurisdiction—or the power of th[e] [C]ourt to hear well-pleaded claims—but merely delimits [ ] [the] [C]ourt's remedial power," and that "[b]y arguing that 'agency control' over potentially responsive records impacts subject-matter jurisdiction, [the] [d]efendants seriously misread the law."  Pl.'s Discovery Mem. at 10.  The Court agrees with the plaintiff.

As the plaintiff correctly notes, see Pl.'s Not. at 2, another member of this Court recently addressed the defendants' exact legal argument.  In Cause of Action Institute v. Internal Revenue

Service, the agency moved to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) on the ground that the FOIA records sought by the plaintiff—coincidentally, the same plaintiff in this action—were not agency records for FOIA purposes, and therefore, the court lacked subject-matter jurisdiction over the plaintiff's complaint.  See 390 F. Supp. 3d 84, 88 (D.D.C. 2019).  In a well-reasoned opinion, the court rejected the agency's argument, holding that the agency's "not-agency-records challenge is one that pertains to the merits of [the plaintiff's] FOIA claim, rather than th[e] Court's power to adjudicate the dispute and grant the requested relief[.]"  Id.

In the Cause of Action Institute case, the court first concluded that the agency's "argument that section 552(a)(4)(B) establishes the parameter's of th[e] Court's subject-matter jurisdiction [ ] finds little support in the relevant case law."  Id. at 98.  Relying on Citizens for Responsibility and Ethics in Washington v. Office of Administration and Main Street Legal Services, Inc. v. National Security Council, the same cases cited by the plaintiff in its opposition to the defendants' motion to dismiss, see Pl.'s Discovery Mem. at 11, 14, 17 (citing Citizens for Responsibility & Ethics in Wash. v. Office of Admin., 566 F.3d 219, 225 (D.C. Cir. 2009), and Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F.3d 542, 566 (2d Cir. 2016)), the court reasoned that "[t]he holdings and reasoning of the [Citizens for Responsibility and Ethics in Washington] and Main Street cases singularly undermine the [agency's] argument that the question of whether or not the records at issue here qualify as 'agency records' implicates th[e] Court's subject-matter jurisdiction."  Cause of Action Inst., 390 F. Supp. 3d at 95.  The court further concluded that

> notwithstanding section 552(a)(4)(B)'s reference to "jurisdiction[,]" [c]ourts have long considered FOIA disputes that pertain to the nature of the defendant entity (i.e., is it an "agency"?) or the nature of the records at issue (i.e., are they "agency records"?) to relate to the merits of a plaintiff's claim that the defendant has violated the FOIA, rather than a court's authority to adjudicate the case.  This means that a Rule 12(b)(1) motion to dismiss brought solely on the grounds that the court lacks

subject-matter jurisdiction because the records are not "agency records" necessarily fails.

Id. at 96 (alteration in original).

The court also found the agency's argument that the court lacked subject-matter jurisdiction to be "manifestly inconsistent with certain bedrock principles of federal jurisprudence." Id. at 98. The court first noted that "it is common practice for federal courts to evaluate their subject-matter jurisdiction (or lack thereof) as a threshold matter, separate and apart from the merits of the plaintiff's claims." Id. (collecting cases). The court also noted that that while "[i]n FOIA cases as in other civil actions, 'the burden of establishing [federal jurisdiction] rests upon the party asserting jurisdiction,'" id. at 100 (second alteration in original) (quoting Kokkonen, 511 U.S. at 377), "it is equally well settled that, at the merits stage of a FOIA case, '[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld[,]''" id. (first alteration in original) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989)). The court reasoned that "[a] government agency's burden of demonstrating that the requested documents are not 'agency records' cannot be logically reconciled with treating that question as a jurisdictional prerequisite, which would require the plaintiff to prove that the requested documents are 'agency records,'" and that "[t]hese contraventions of established law are averted entirely if one rejects the [agency's] contorted view of section 552(a)(4)(B)'s reference to jurisdiction, and interprets that language to pertain only to a court's remedial power to act on a meritorious claim under the FOIA, rather than to a court's subject-matter jurisdiction[.]" Id. at 101.

This Court agrees with its colleague's reasoning in the Cause of Action Institute case and likewise concludes that the question of whether the browsing histories at issue are records within

the meaning of the FOIA "pertains to the <u>merits</u> of [the plaintiff's] FOIA claim, rather than th[e] [C]ourt's power to adjudicate the dispute and grant the requested relief" and that "the allegations of [the plaintiff's] [C]omplaint are more than sufficient to satisfy the minimal pleading requirements that are applicable to the initial stage of FOIA litigation." <u>Id.</u> at 88.  Accordingly, the Court denies the defendants' Rule 12(b)(1) motion to dismiss.

**B.      The Defendants' Converted Rule 56 Motion for Summary Judgment**

The Court next turns to the defendants' Rule 12(b)(6) motion to dismiss.  As a preliminary matter, the Court notes that the defendants submitted a number of declarations in support of their motion to dismiss.  <u>See generally</u> Mao Decl.; 1st McDonald Decl; 2d McDonald Decl.; Walsh Decl.  As the defendants correctly argue, <u>see</u> Defs.' Mot. to Dismiss Mem. at 11, Rule 12(d) instructs that, "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); <u>see</u> <u>3M Co. v. Boulter</u>, 842 F. Supp. 2d 85, 100 (D.D.C. 2012) ("The . . . Circuit agrees that Federal Rules 12 and 56 are properly construed to require that a speaking motion to dismiss must be treated as a motion for summary judgment."); <u>see also</u> <u>id.</u> at 97 (defining a "speaking motion" as a "motion[] attacking the merits of a pleader's claim by relying on matters outside the pleadings, such as affidavits or other factual material").  "A motion may be treated as one for summary judgment even if the parties have not been provided with notice or an opportunity for discovery if they have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise."  <u>Beach TV Props., Inc. v. Solomon</u>, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (quoting <u>Bowe-Connor v. Shinseki</u>, 845 F. Supp. 2d 77, 85 (D.D.C. 2012)).  Because it is

11

impossible for the Court to evaluate the merits of the defendants' Rule 12(b)(6) motion to

dismiss without relying on the declarations cited throughout the motion, and because the plaintiff

was not "taken by surprise," id., by the defendants' intention to convert their Rule 12(b)(6)

motion to dismiss into a Rule 56 motion for summary judgment, see Pl.'s Discovery Mot. at 1

(referencing the defendants' "alternative motion for summary judgment"), the Court finds it

appropriate to convert the defendants' Rule 12(b)(6) motion into a Rule 56 motion for summary

judgment.  However, before evaluating the merits of the defendants' summary judgment motion,

the Court must first address the plaintiff's request for limited discovery pursuant to Rule 56(d)

"on the grounds that[, without discovery,] it cannot present facts essential to justify its opposition

to [the] [d]efendant[s'] . . . alternative motion for summary judgment."  Pl.'s Discovery Mot. at

1.

### 1.    Whether the Plaintiff is Entitled to Discovery

The plaintiff requests that the Court allow "limited discovery," arguing that "the facts

upon which [the] [d]efendants rely are insufficiently developed to allow [the plaintiff] to

properly oppose summary judgment" and "[f]urther inquiry must be made into the nature, actual

use, and maintenance of Internet browsing records at [the] OMB and [the] USDA."  Pl.'s

Discovery Mem. at 35.  The defendants respond that discovery is not required because their

"[d]eclarations [a]re [r]easonably [d]etailed[,]" Defs.' Discovery Opp'n at 4; they "[s]ubmitted

[t]heir [d]eclarations in [g]ood [f]aith[,]" id. at 6; and "[n]o [f]actual [d]ispute remains[,]" id.

The Court agrees with the defendants that the plaintiff is not entitled to discovery in this matter.

As previously discussed, "[d]iscovery in FOIA [cases] is rare and should be denied where

[(1)] an agency's declarations are reasonably detailed, [(2)] submitted in good faith[,] and

[(3)] the [C]ourt is satisfied that no factual dispute remains."  Schrecker, 217 F. Supp. 2d at 35.

"Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc., 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. Cent. Intelligence Agency, 692 F.3d 770, 771 (D.C. Cir. 1981)).

As to whether the defendants' declarations are "reasonably detailed" and were "submitted in good faith," Schrecker, 217 F. Supp. 2d at 35, the plaintiff argues that the declarations are not reasonably detailed and implicitly suggests that they were not submitted in good faith because the declarants, i.e., the "[d]efendants' FOIA officials and [information technology] staff[,] cannot testify as to how an agency head, for example, actually used his Internet browsing history" and that "such information can only be provided directly by the official," Pl.'s Discovery Reply at 6. However, the

> [p]laintiff misunderstands the personal knowledge requirements for FOIA declarations. Federal Rule of Civil Procedure 56(e) provides that a declaration must be made on personal knowledge, set out facts that would be admissible as evidence, and show that the [declarant] is competent to testify on the matters stated. A declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.

Pinson v. U.S. Dep't of Justice, 160 F. Supp. 3d 285, 294 (D.D.C. 2016) (second, third, and fourth alterations in original) (citation and internal quotation marks omitted) (quoting Barnard v. Dep't of Homeland Sec., 531 F. Supp. 2d 131, 138 (D.D.C. 2008)).  As the defendants correctly note, "[u]nder Rule 56, declarations 'must be made on personal knowledge,' but this requirement 'can be satisfied, in FOIA cases, via the declaration of an agency official knowledgeable in the way information is gathered.'"  Defs.' Discovery Opp'n at 5 (quoting Beveridge & Diamond, P.C. v. U.S. Dep't of Health & Human Servs., 85 F. Supp. 3d 230, 237 n.1 (D.D.C. 2015)).

Here, the declarations were submitted by agency officials familiar with and capable of addressing the "creation, possession, control, and use [of the browsing histories]; and [the defendants'] intent [with respect to the browsing histories], [their] ability to use [the browsing histories], [the] extent of reliance [on the browsing histories], and [the] integration [of the browsing histories] into [the defendants'] files." Defs.' Discovery Opp'n at 4. See generally Mao Decl. (USDA Information Discovery and Litigation Support Program Manager discussing the USDA's collection, retention, and use of the contested browsing histories); 1st McDonald Decl. (OMB Director of Information & Technology discussing the OMB's collection and retention of the contested browsing histories); 2d McDonald Decl. (same); Walsh Decl. (OMB Deputy General Counsel discussing the OMB's use of the contested browsing histories). Indeed, elsewhere in the plaintiff's briefing, the plaintiff appears to contradict itself and agree with the defendants, arguing that "[t]he subjective motivation of individual employees is irrelevant to the Court's agency control analysis" and that "[w]hat matters is how [the] OMB and [the] USDA, as institutional actors, intended to treat records that were created as a result of their employees' online activity," Pl.'s Discovery Mem. at 23, thereby undermining its purported need to discover how individual agency officials used their browsing histories. Moreover, the plaintiff's suggestion that the contested browsing histories were used by the defendants for purposes other than those described in the detailed declarations offered by the defendants is "purely speculative," SafeCard Servs., Inc., 926 F.2d at 1200, and "[d]iscovery is not warranted 'when it appears that discovery would only . . . afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits,'" Jarvik v. Cent. Intelligence Agency, 741 F. Supp. 2d 106, 122 (D.D.C. 2010) (alterations in original) (quoting Military Audit Project v. Casey, 656 F.2d 724, 751–52 (D.C. Cir. 1981)). Accordingly, because the declarations

are sufficiently probative of the defendants' collection, retention, and use of the contested

browsing histories, and the plaintiff has not offered any evidence calling into doubt the

credibility of the declarations, the Court concludes that the declarations are "reasonably detailed"

and were "submitted in good faith." Schrecker, 217 F. Supp. 2d at 35

Additionally, "the [C]ourt is satisfied that no factual dispute remains" regarding the

creation, preservation, or use of the requested browsing histories. Id. The plaintiff argues that

factual disputes exist regarding (1) the use of the contested browsing histories because "[o]nly

the officials identified in [the plaintiff's] FOIA requests can provide admissible testimony about

their own use of Internet browsers on agency devices (including any de minimis personal use)[,]

. . . their regular use of Internet browsing history records for purposes of convenience or

otherwise[,] . . . [and] the ability to segregate potentially exempt personal information from their

Internet browsing histories"; and (2) "[the] [d]efendants' efforts to identify, retrieve, and

preserve the Internet browsing history records at issue in this case." Pl.'s Discovery Mem. at 38.

However, as the defendants correctly note,

> [a]lthough a document creator's testimony is one way to show that a document was
> not broadly used at the agency, it is not the only way. Another way is precisely
> what [the] [d]efendants have submitted: testimony from knowledgeable agency
> officials, who would be aware of a document's use, stating definitively that the
> agency has not used the documents in question.

Defs.' Discovery Opp'n at 6. Here, the defendants have, as previously discussed, submitted

declarations discussing the defendants' creation, retention, and use of the contested browsing

histories and the plaintiff has given the Court no reason to doubt the credibility of the

declarations. Because "the affidavits supplied by the agency meet the established standards for

summary judgment in a FOIA case and [ ] [the] plaintiff has not adequately called these

submissions into question, no factual dispute remains, and discovery is inappropriate." Pub.

Citizen Health Research Grp. v. Food & Drug Admin., 997 F. Supp. 56, 72–73 (D.D.C. 1998)

(citing Goland, 607 F.2d at 352), aff'd in part, rev'd in part and remanded, 185 F.3d 898 (D.C.

Cir. 1999).

Accordingly, because the defendants have submitted reasonably detailed declarations that

are probative of the issues in this case, and the plaintiff has not established bad faith on the part

of the defendants, the Court concludes that permitting discovery is not appropriate in this case

and therefore the plaintiff's motion to conduct discovery is denied.

### 2.    Whether the Browsing Histories are Agency Records

Having concluded that the plaintiff is not entitled to discovery in this matter, see Part

III.B.1, supra, the Court will now evaluate the merits of the defendants' argument that the

browsing histories are not agency records within the meaning of the FOIA, which, as the Court

has previously concluded, is properly raised in a Rule 56 motion for summary judgment, rather

than a Rule 12(b)(6) motion to dismiss, see Part III.B, supra.  The defendants argue that "[t]he

[r]equested [b]rowsing [h]istories [a]re [p]ersonal [m]aterials, [n]ot [a]gency [r]ecords.  Defs.'

Mot. to Dismiss Mem. at 13.  The plaintiff responds that "Internet browsing history records are

'agency records,' not 'personal records,' and they are under agency control; they are therefore

subject to disclosure under the FOIA."  Pl.'s Discovery Mem. at 20.

> The Supreme Court and the [District of Columbia] Circuit have repeatedly noted
> that FOIA does not provide any definition of "agency records."  In [United States
> Department of Justice] v. Tax Analysts, the Supreme Court established a two-prong
> test to determine whether documents qualify [as agency records]: the first prong
> asks whether the records were created or obtained by the agency, and the second
> prong considers the extent to which the agency was in control of the records at the
> time the FOIA request was made.

Physicians Comm. for Responsible Med. v. U.S. Dep't of Agric., 316 F. Supp. 3d 1, 8 (D.D.C. 2018) (citations omitted) (citing Tax Analysts, 492 U.S. at 144–45). In Burka v. United States Department of Health and Human Services, the Circuit

> identified four factors relevant to a determination of whether an agency exercises sufficient control over a document to render it an "agency record": "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files."

87 F.3d 508, 515 (D.C. Cir. 1996) (quoting Tax Analysts v. Dep't of Justice, 845 F.2d 1060, 1069 (D.C. Cir. 1988), aff'd on other grounds, 492 U.S. 136 (1989)). These factors are "referred to as the Burka factors." Dem. Forward Found. v. U.S. Gen. Servs. Admin., 393 F. Supp. 3d 45, 51 (D.D.C. 2019).

Because the first prong of the Tax Analysts test, creation or acquisition of the document by the agency, is not disputed by the defendants, see Defs.' Mot. to Dismiss Mem. at 14 ("The requested browsing histories in this case were created indirectly by agency employees, simply by using their browsers, and are located at the agencies."), the Court will proceed to the second prong of the test, control of the document when the FOIA request was made, which is evaluated using the Burka four-factor test, see Burka, 87 F.3d at 515 (identifying the four factors courts must consider under the second prong of the Tax Analysts test).

As to the first Burka factor, "the intent of the document's creator to retain or relinquish control over the records," id., the defendants argue that "[n]othing about the [i]ntent of the [h]istories' [c]reator[s] [i]ndicates that [t]hey [c]onstitute [a]gency [r]ecords," Defs.' Mot. to Dismiss Mem. at 23, because "[n]one of the relevant employees did anything to save their histories from the automatic deletion process or from deletion following reimaging of the device," id. at 23–24. The plaintiff responds that the "[t]he subjective motivation of individual

employees is irrelevant to the Court's control analysis"; rather, "[w]hat matters is how [the defendants], as institutional actors, intended to treat records that were created as a result of their employees' online activity."  Pl.'s Discovery Mem. at 22–23.

Here, the Court agrees with the defendants that the relevant inquiry with respect to the first Burka factor focuses on the agency's intent as the creator of the document, rather than the individual employee's intent when generating the document in the course of his or her employment.  The defendants do not cite, nor can the Court locate, any case law standing for the proposition that the intent factor articulated in Burka refers to the individual agency employee's subjective intent, as opposed to the intent of the agency.  See Defs.' Mot. to Dismiss Mem. at 23–26.  And, Burka itself focused on the agency's intent.  Cf. Burka, 87 F.3d at 515 (concluding that a federal agency, which contracted out collection and analysis of data to a private company, nonetheless "had constructive control of the [data] tapes at the time [the plaintiff] filed his FOIA requests" and intended to retain control over the data tapes because, inter alia, it "prohibited [the company] from making any independent disclosures").  Case law suggests that the first Burka factor becomes particularly relevant to the Court's analysis in instances where documents are transferred between an entity not subject to the FOIA's disclosure laws and a federal agency that is, in which case the Court must resolve whether the entity intended to relinquish control over the documents to the agency, thereby subjecting them to the FOIA's purview.  See, e.g., Cause of Action v. Nat'l Archives & Records Admin., 926 F. Supp. 2d 182, 188 (D.D.C. 2013) (concluding that a commission created by statute, whose records were transferred to a federal agency for preservation and processing once the commission expired, intended to retain control of the records, in light of a letter sent by the commission's chairman "specifically stat[ing] that the FOIA will not apply to [c]ommission records [ ] after they are transferred to [the agency],"

and the records were therefore not subject to the FOIA) (internal quotation marks omitted)),

aff'd, 753 F.3d 210 (D.C. Cir. 2014); Judicial Watch, Inc. v. Fed. Hous. Fin. Agency, 744 F.

Supp. 2d 228, 233 (D.D.C. 2010) (concluding that publicly traded corporations, which were

placed under an agency conservatorship by statute, "intended to retain or to relinquish control"

over the records they created because they "knowingly gave up their records to the conservator,"

but nevertheless concluding that the records were not subject to the FOIA because they were not

used by the agency), aff'd, 646 F.3d 924 (D.C. Cir. 2011).  Here, there is no suggestion that the

defendants intended to relinquish control of the browsing histories.  Therefore, the Court

concludes that the defendants intended to retain control over the documents, and that the first

Burka factor weighs against the defendants' argument that the browsing histories are not agency

records.

        Here, as to the second Burka factor, "the ability of the [defendants] to use and dispose of

the [browsing histories] as [they] see[] fit," Burka, 87 F.3d at 515, the defendants argue that the

"OMB and [the] USDA [ ] have a longstanding practice of following internet browsers'

automatic deletion setting, which . . . removes the requested material from their control."  Defs.'

Mot. to Dismiss Mem. at 26.  The plaintiff responds that the "[d]efendants and their employees

have an unrestricted ability to use and dispose of Internet browsing history records[,]" Pl.'s

Discovery Mem. at 24, and therefore the second Burka factor weighs in favor of its argument

that the browsing histories are agency records.  As to the defendants' ability to use the browsing

histories, the defendants do not dispute that they have the ability to use the browsing histories.

See Defs.' Mot. to Dismiss Mem. at 26 (stating that "the [agency] employees themselves and, in

certain circumstances, administrative [information technology] staff" "have access to the

[browsing] histories").  And, as to the defendants' ability to dispose of the browsing histories, the

defendants' supporting declarations demonstrate that the defendants did not, as they contend,

"follow[] internet browsers' automatic deletion setting," Defs.' Mot. to Dismiss Mem. at 26;

rather, the defendants altered the retention period to extend beyond the period automatically set

by the web browser, see Mao Decl. ¶ 8 (representing that "Microsoft's default setting retains the

browser's history for [twenty] days" but "the USDA extended the retention period to [forty-five]

days in accordance with the Defense Information Systems Agency's Security Technical

Implementation Guide); 1st McDonald Decl. ¶ 4 n.1 ("The factory default settings for the

Microsoft products (Internet Explorer and Edge) is to delete the browser history after [twenty]

days.  However, pursuant to Department of Defense guidance, the settings for OMB workstations

have been altered so they delete after [forty] days.").  Thus, even if the browsing histories were

in fact deleted, the declarations show that the defendants possessed "the ability . . . to use and

dispose of the [browsing histories] as [they] s[aw] fit," Burka, 87 F.3d at 515 (emphasis added),

and therefore the second Burka factor also weighs against the defendants' argument that the

browsing histories are not agency records.

As to the third Burka factor, "the extent to which agency personnel have read or relied on

the document," id., the defendants argue that the "OMB and [the] USDA have not read or relied

on the requested browsing histories for any reason," Defs.' Mot. to Dismiss Mem. at 23.  The

plaintiff responds that the "defendants[] repeatedly imply that their employees read or rely upon

Internet browsing history records."  Pl.'s Discovery Mem. at 26.

In considering the impact of this use factor, the Circuit has explained that the

use of the documents by employees other than the author is an important
consideration.  An inquiry is therefore required into the purpose for which the
document was created, the actual use of the document, and the extent to which the
creator of the document and other employees acting within the scope of their
employment relied upon the document to carry out the business of the agency.

Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice, 742 F.2d 1484, 1493 (D.C. Cir. 1984).  "In

deciding whether an agency controls a document its employees created, [the Circuit] ha[s]

consistently found that 'use is the decisive factor.'" Judicial Watch, Inc. v. Fed. Housing Fin.

Agency, 646 F.3d 924, 927 (D.C. Cir. 2011) (quoting Consumer Fed'n of Am. v. Dep't of

Agric., 455 F.3d 283, 288 (D.C. Cir. 2005)).  Here, the defendants represent that that they never

accessed, distributed, or relied upon the browsing histories.  See Mao Decl. ¶ 15 ("The USDA

does not have any knowledge or record of the USDA using browser histories of the Secretary of

Agriculture or the Director of Communications for any purpose."); 1st McDonald Decl. ¶ 8

(explaining that the OMB's information technology staff "would only be able to view that

material if they (1) were physically seated at the user's workstation or (2) were able to virtually

sign onto the user's workstation, with the assistance of the user" or "if there is malfeasance

suspected," but that "[t]his has not been done with respect to Mr. Mulvaney, Mr. Czwartacki, or

Ms. Garibay"); Walsh Decl. ¶ 7 (representing that she "has never seen the [OMB's] decision-

making process rely on reference or use of an individual's Internet browser history" and that

"[t]o the extent that individuals have performed research that has made use of their browser

history, that information has not played a role in the agency's decision-making process").

Therefore, the third Burka factor supports the defendants' argument that the browsing histories

are not agency records.  See Consumer Fed'n of Am., 455 F.3d at 293 (concluding that an

agency official's electronic calendar was not an agency record because "there [was] no evidence

that other employees . . . relied on [his] calendar" and that "it was not distributed to other

employees" (internal quotation marks omitted)); Gallant v. Nat'l Labor Relations Bd., 26 F.3d

168, 172 (D.C. Cir. 1994) (concluding that an agency official's personal letters were not agency

records based on, inter alia, "other employees' lack of reliance on the correspondence to carry

out the business of the agency"); cf. Consumer Fed'n of Am., 455 F.3d at 291 (concluding that

five agency officials' calendars were agency records because they were distributed to "top [ ]

staff" within the agency).  Accordingly, "[a]lthough the first two Burka factors help [the

plaintiff], the third is fatal to its claim.  Burka instructs [the Court] to consider the extent to

which agency personnel have read or relied upon the document, and here it is uncontested that

[the defendants] ha[ve] not used the requested records [sought by the plaintiff] in any way."

Judicial Watch, Inc., 646 F.3d at 927 (citation and internal quotation marks omitted).

As to the final Burka factor, "the degree to which the document was integrated into the

agency's record system or files," Burka, 87 F.3d at 515, the defendants argue that "the histories

were not integrated into the agencies' files," Defs.' Mot. to Dismiss Mem. at 23, because they

"were stored on the local drive of the employee's computer or mobile device," and "the only way

for OMB or USDA [information technology] staff to access an employee's browsing history is to

physically sit at the employee's work station or to virtually sign on to the workstation with the

employee's assistance[,]" id. at 20–21.  The plaintiff responds that "[t]he maintenance of Internet

browsing history records on agency hardware, which is physically accessible by other agency

officials or representatives, is sufficient to meet the fourth prong of the Burka test."  Pl.'s

Discovery Mem. at 27.  Here, "[t]o the extent the [browsing histories] were on the [defendants']

computer system[s], they were 'necessarily subject[ed] . . . to the control of that system's

administrators." Edelman v. Secs. & Exchange Comm'n, 172 F. Supp. 3d 133, 152 (D.D.C.

2016) (fifth and sixth alterations in original) (quoting Consumer Fed'n of Am., 455 F.3d at 290);

see Mao Decl. ¶¶ 10, 11 (representing that the USDA's information technology "staff could [ ]

access th[e] [contested] browser histories if . . . a request for assistance to the [information

technology] helpdesk," "supervisors can request the browser history of employees suspected of

inappropriate use . . . of government [information technology] resources," and "cyber investigators can [ ] collect browser histories as part of a cyber investigation"); 1st McDonald Decl. ¶ 8 (representing that the OMB's information technology "staff . . . would [ ] be able to view [browser histories] if they (1) were physically seated at the user's workstation or (2) were able to virtually sign onto the user's workstation, with the assistance of the user").  But see Dem. Forward Found., 393 F. Supp. 3d at 54  (concluding that the agency "did not sufficiently 'control' the emails to qualify as 'agency records,' where, inter alia, "the emails were never integrated into [the agency's] records systems").  Accordingly, the final Burka factor also weighs against the defendants' argument that the browsing histories were not agency records.

Although some of the factors that comprise the Burka four-factor test weigh in favor of a finding that the browsing histories were under the defendants' control, because "use is the decisive factor" pursuant to the Tax Analysts inquiry, Judicial Watch, Inc., 646 F.3d at 927 (quoting Consumer Fed'n of Am., 455 F.3d at 288), and the defendants have demonstrated that they "neither created nor referenced [the browsing histories] in the 'conduct of [their] official duties,' the [defendants] ha[ve] not exercised the degree of control required to subject the document to disclosure under [the] FOIA," id. at 928 (citation omitted) (quoting Tax Analysts, 492 U.S. at 145).  Therefore, the Tax Analysts test compels the Court to conclude that the browsing record are not agency records and accordingly, the Court grants the defendants' Rule 56 motion for summary judgment.[3]

---

[3] The Court notes that in Consumer Federation of America, the Circuit, in determining whether the electronic calendars of senior agency officials were agency records subject to disclosure under the FOIA, employed a "totality of the circumstances test . . . 'focus[ing] on a variety of factors surrounding the creation, possession, control, and use of the document by an agency.'"  455 F.3d at 287 (quoting Bureau of Nat'l Affairs, Inc., 742 F.2d at 1490).  In applying these factors, the Circuit relied on Bureau of National Affairs v. United States Department of Justice, a case that was decided prior to the Supreme Court's creation of the two-prong test in Tax Analysts.  See Consumer Fed'n of Am., 455 F.3d at 288–89 (applying the totality of the circumstances test (citing Bureau of Nat'l Affairs, 742 F.2d at 1486–96)).  However, even applying the totality of the circumstances test, the Court finds that the

(continued . . . )

## IV.    CONCLUSION

For the foregoing reasons, the Court denies the defendants' Rule 12(b)(1) motion to dismiss, denies the plaintiff's motion for Rule 56(d) discovery, and grants the defendants' request for Rule 56 summary judgment raised as an alternative basis for resolving the defendants' Rule 12(b)(6) motion to dismiss.[4]

**SO ORDERED** this 15th day of November, 2019.

REGGIE B. WALTON
United States District Judge

---

(. . . continued)

browsing histories are not agency records because "[u]se is the decisive factor" in the totality of the circumstances inquiry, id. at 288, and, as the Court has already concluded that the defendants have demonstrated that they did not make use of the browsing histories in any way.

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.